2008 OK 96

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Roland Vincent COMBS, III, Respondent.**

**SCBD Nos. 5417, 5219.**

Supreme Court of Oklahoma.

Oct. 28, 2008.

---

832

Janis Hubbard, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Aletia Haynes Timmons, Oklahoma City, OK, for Respondent.

WATT, J.:

¶1 The attorney filed an application for reinstatement following his suspension by this Court for a period of ninety days.[1] Thereafter, the Bar Association charged Combs with one count of professional misconduct in relation to his failure to follow procedures mandated for an attorney suspended by order of this Court for a period of less than two years. These two matters are considered together for the sole purpose of promulgating one opinion [2] addressing the issues presented.

¶2 The cause presents unusual facts including language of the Court's opinion which arguably led the attorney to believe that there were no conditions precedent to his resumption of the practice of law after the expiration of his suspension, the Bar Association's lack of specificity in directing the attorney to the rules relating to his situation and in explaining the requirements of the rules, and the attorney's failure to familiarize himself with the rules related to his suspension and to comply with the specific requirements of those rules. Upon a *de novo* review [3] of the unique facts and the applicable law, we determine that the clear and convincing evidence [4] supports a finding that the attorney failed to comply with the technical require-

---

1. *State ex rel. Oklahoma Bar Ass'n v. Combs [Combs I]*, 2007 OK 65, 175 P.3d 340.

2. *In re Adoption of M.J.S.*, 2007 OK 43, ¶1, 162 P.3d 200; *City of Midwest City v. House of Realty, Inc. [Realty I]*, 2004 OK 56, ¶1, 100 P.3d 678.

3. *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, 2006 OK 23, ¶2, 136 P.3d 616; *State ex rel. Oklahoma Bar Ass'n v. Garrett*, 2005 OK 91, ¶17, 127 P.3d 600; *State ex rel. Oklahoma Bar Ass'n v. Anderson*, 2005 OK 9, ¶15, 109 P.3d 326.

4. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Kessler*, 1995 OK 32, ¶23, 895 P.2d 713; *State ex rel. Oklahoma Bar Ass'n v. Downing*, 1993 OK 44, ¶11, 863 P.2d 1111.

ments of Rules 9.1 and 11.8,[5] Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. We hold that respondent's failure to comply with the rules governing a suspension of less than two years warrants: 1) a retroactive suspension of six months to the date the attorney filed his motion for an order of reinstatement;[6] 2) the payment of costs of $1,006.61;[7] and 3) a requirement that the attorney file, with this Court and with the complainant, an affidavit declaring that he has familiarized himself with and has a clear understanding of the Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 2 and the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

## FACTS

¶ 3 The attorney was suspended from the practice of law for a period of ninety days and costs were imposed on September 11, 2007, based on clear and convincing evidence of two counts of mishandling client funds. The current proceeding was instituted pursu-

ant to Rules 6[8] and 11.8,[9] Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

¶ 4 The ninetieth day following the day of suspension fell on December 10, 2007. With the addition of a twenty-day period in which rehearing could have been filed, the suspension period would have run to December 30, 2007. **It is agreed that the attorney did not engage in the unauthorized practice of law during the ninety-day suspension period.** It is also undisputed that the attorney began practicing law in January of 2008 under the mistaken impression that there were no conditions precedent to his representation of clients other than the expiration of the suspension period and the payment of costs. The attorney was informed by the trial court in February of 2008 that his name continued to appear on the list of suspended attorneys. Although when Combs contacted his representative in the disciplinary proceeding he was informed that the listing was nothing more than a "glitch" in the system, the attor-

5. Rule 9.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A providing: "When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended, or who has resigned membership pending disciplinary proceedings, must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel. If such lawyer is a member of, or associated with, a law firm or professional corporation, such notice shall be given to all clients of the firm or professional corporation, which have legal business then pending with respect to which the disbarred, suspended or resigned lawyer had substantial responsibility. The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal. The lawyer must file, within twenty (20) days, an affidavit with the Commission and with the Clerk of the Supreme Court stating that the lawyer has complied with the provisions of this Rule, together with a list of the clients so notified and a list of all other State and Federal courts and administrative agencies before which the lawyer is admitted to practice. Proof of substantial compliance by the lawyer with this Rule 9.1 shall be a condition precedent to any petition for reinstatement."
Rule 11.8, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A providing: "A lawyer who has been suspended for two (2) years or less upon disciplinary charges may resume practice upon the expiration of the

period of suspension by filing with the Clerk of the Supreme Court an original and two (2) copies of an affidavit affirming that affiant has not engaged in the unauthorized practice of law or otherwise violated the rules of the Association or the terms of the affiant's order of suspension. The affidavit shall also describe all business or professional activities of the affiant and places of residence during the term of the suspension. No order of the Court is necessary; however, material deletions or misrepresentations in the affidavit shall be grounds for subsequent discipline.
A copy of the affidavit shall be served on the General Counsel by the lawyer at the time of its filing, who may within sixty (60) days file a separate disciplinary complaint with the Professional Responsibility Commission stating the lawyer during the suspension engaged in the unauthorized practice of law or other actions which would render the lawyer subject to discipline."

6. See, *State ex rel. Oklahoma Bar Ass'n v. Albert*, 2007 OK 31, ¶ 23, 163 P.3d 527.

7. Rule 6.16, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

8. Rule 6.1, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

9. Rule 11.8, Rules Governing Disciplinary Proceedings, see note 5, supra.

ney opted to "self suspend" himself and did not engage in any further practice of law.

¶ 5 From the outset, Combs was confused about what steps he would have to take before he began practicing law. The attorney asserts that language of the opinion in his disciplinary proceeding led him to believe that there was no requirement that he do anything other than refrain from the practice of law during the ninety-day period and pay the costs of the proceeding. Specifically, Combs points to language in a footnote of the opinion providing that "[r]einstatement for a member of the Bar who was suspended for any period of time shorter than two years and one day is not connected with any formal process."[10] Another footnote in the opinion provides the procedures which must be followed for a suspension for two years and one day.[11]

¶ 6 Combs took some affirmative steps to attempt to resolve his questions over the readmission process. After the attorney made inquiries to his representative in the disciplinary proceedings, the counsel drafted a letter to the prosecuting Assistant General Counsel asking for "practical advice" on how Combs could avoid difficulties during his suspension period. In response, the Assistant General Counsel referred Combs to the Bar Association's Ethics Counsel. The Ethics Counsel did not advise Combs of the requirements of either Rule 9.1 or 11.8. Apparently, Combs' representative made a second inquiry to the Bar Association in December of 2007 in which he was told that Combs needed to comply with Rule 9.1, but the representative indicated he did not believe the rule's requirements applied to his client.

¶ 7 It is unquestioned that Combs did not comply with the technical requirements of Rule 9.1. He did not: notify by certified mail, within twenty (20) days, his clients with pending business of his suspension and the need to obtain substitute representation; file a formal withdrawal as counsel in all his pending cases; or, within twenty (20) days, file an affidavit with the Commission and with this Court stating he had complied with

the rule's provisions or provide a list of all his clients notified along with a statement of all tribunals and agencies before which he was admitted to practice law. At the conclusion of his suspension, Combs did not follow the dictates of Rule 11.8 to file an affidavit with this Court's Clerk or provide a copy of the affidavit to the Bar Association's General Counsel.

¶ 8 Combs did take steps to protect his clients' interests after the suspension was entered. The following Saturday, he called several attorneys into his offices. The clients' files were distributed among the attorneys who undertook the representation, for the most part, without compensation. There is no evidence that any client was prejudiced or suffered any harm due to the change in representation. Clients who called Combs' offices were informed of the suspension and directed to their new attorneys. Rather than withdrawals being filed in all of the cases, some of the dockets indicate that the new attorneys merely made entries of appearance or showed themselves as substitute counsel.

¶ 9 The attorney contends that his actions were sufficient to substantially comply with Rule 9.1. He acknowledges that he made no attempt to comply with Rule 11.8 until March 5, 2008 when he filed a motion for an order reinstating him to the practice of law. When the Bar Association filed its motion to strike, Combs supplemented his original affidavit with a restated supplement which addressed the unauthorized practice of law issue and had a list of clients appended along with an accounting of the courts and agencies in which the attorney was admitted to practice.

¶ 10 On May 5, 2008, the Bar Association filed a complaint charging Combs with one count in relation to his failure to follow procedures mandated for an attorney suspended by order of this Court for a period of less than two years. A hearing was held before the trial panel on June 19, 2008. It issued its report on June 17, 2008 recommending: a six month suspension retroactive to January 1, 2008; the attorney be required to demon-

---

10. *State ex rel. Oklahoma Bar Ass'n v. Combs* [*Combs I*], see note 1 at fn. # 59, supra.

11. *State ex rel. Oklahoma Bar Ass'n v. Combs* [*Combs I*], see note 1 at fn. # 58, supra.

strate a basic knowledge and understanding of the Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 2 and Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; and the imposition of the costs of the disciplinary proceeding. The briefing cycle was completed on August 1, 2008, with the parties filing a joint waiver of briefs.

## JURISDICTION AND STANDARD OF REVIEW

¶ 11 It is this Court's nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law—the duty is vested solely in this department of government.[12] Our determinations are made *de novo.*[13] We bear the ultimate responsibility for deciding whether misconduct has occurred and, if so, what discipline is warranted. Neither the finding of facts of the trial panel nor its view of the evidence or the credibility of witnesses bind this Court. The recommendation is merely advisory.[14] The same is true when the parties stipulate to misconduct and a recommendation for discipline.[15] Before this Court will discipline an errant attorney, misconduct must be demonstrated by clear and convincing evidence.[16]

¶ 12 Discipline is administered to preserve public confidence in the bar. Our responsibility is not to punish but to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts, and of the legal profession. Discipline is imposed to maintain these goals rather than as a punishment for the lawyer's misconduct.[17] Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts.[18] Discipline is fashioned to coincide with the discipline imposed upon other lawyers for like acts of professional misconduct.[19] Although this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors.[20]

## SPECIFIC REQUIREMENTS OF DISCIPLINARY RULES 9.1 AND 11.8.

¶ 13 The Bar Association's complaint contained a single count relating to the attorney's failure to comply with Rules 9.1[21] and

**12.** Title 5 O.S.2001 § 13; *State ex rel. Oklahoma Bar Ass'n v. Farrant,* 1994 OK 13, ¶ 13, 867 P.2d 1279; *Tweedy v. Oklahoma Bar Ass'n,* 1981 OK 12, ¶ 14, 624 P.2d 1049.

**13.** *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Garrett,* see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Anderson,* see note 3, supra.

**14.** Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Besly,* 2006 OK 18, ¶ 2, 136 P.3d 590; *State ex rel. Oklahoma Bar Ass'n v. Taylor,* 2003 OK 56, ¶ 2, 71 P.3d 18.

**15.** *State ex rel. Oklahoma Bar Ass'n v. Besly,* see note 14, supra; *State ex rel. Oklahoma Bar Ass'n v. Taylor,* see note 14, supra; *State ex rel. Oklahoma Bar Ass'n v. McGee,* 2002 OK 32, ¶ 20, 48 P.3d 787, *rehearing denied* (2002).

**16.** Rule 6.12, Rules Governing Disciplinary Proceedings, see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Funk,* 2005 OK 26, 114 P.3d 427; *State ex rel. Oklahoma Bar Ass'n v. Kessler,* 1995 OK 32, ¶ 23, 895 P.2d 713.

**17.** *State ex rel. Oklahoma Bar Ass'n v. Phillips,* 2002 OK 86, ¶ 21, 60 P.3d 1030; *State ex rel. Oklahoma Bar Association v. Bedford,* 1997 OK 83, ¶ 18, 956 P.2d 148; *State ex rel. Oklahoma Bar Ass'n v. English,* 1993 OK 68, ¶ 12, 853 P.2d 173.

**18.** *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Badger,* 1995 OK 113, ¶ 13, 912 P.2d 312; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, ¶ 12, 567 P.2d 975.

**19.** *State ex rel. Oklahoma Bar Ass'n v. Patterson,* 2001 OK 51, ¶ 29, 28 P.3d 551; *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, ¶ 0, 914 P.2d 644; *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 1994 OK 53, ¶ 16, 880 P.2d 339.

**20.** *State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94, ¶ 38, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Rozin,* 1991 OK 132, ¶ 10, 824 P.2d 1127.

**21.** Rule 9.1, Rules Governing Disciplinary Proceedings, see note 5, supra.

11.8,[22] Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. It insists that Combs has not met the requirements of the rules and that his failure to do so led to his participating in the unlicensed practice of law for approximately a two-month period following the end of his ninety-day suspension. The attorney asserts that he substantially complied with Rule 9.1 and that, through the combination of his original affidavit filed on March 5, 2008 and the restated supplemental affidavit filed on April 21, 2008, he has met the requirements of Rule 11.8. Combs contends that any deficiency in his acts immediately following his suspension and after he again began practicing law may be excused by the confusing language of the opinion imposing discipline, the failure of the Bar Association to give him proper instructions, and his unfamiliarity with the procedures related to disciplinary proceedings. **Although we view none of the attorney's arguments as completely convincing, we address them to avoid any further confusion by this respondent, his counsel, or by any other attorney facing a suspension of less than two years.**

¶ 14 The language Combs points to in the opinion is found at footnote 59 providing:

"Reinstatement for a member of the Bar who is suspended for any period of time shorter than two years and one day is not connected **with any formal process**...." [Emphasis added.]

Coupled with the language of footnote 59 is a statement in footnote 58 providing in pertinent part:

"A suspension from the practice of law for **two years and one day** is tantamount to disbarment. In order to be reinstated, a lawyer suspended for **that period of time** must follow the readmission procedure crafted for disbarred attorneys...."[23] [Emphasis added.]

Rules 11.1 and 11.4, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App.

1–A are referred to in the quoted footnotes. **Nevertheless, neither footnote directs the attorney to Rule 11.8 nor to Rule 9.1.**

[10] ¶ 15 Read in isolation, as Combs apparently did, the language might lead one to believe that there were no formal requirements precedent to the attorney's reinstating his law practice. However, had the attorney critically analyzed the language of footnote 59, he should have been put on notice that some action on his part might be required. The phrase which apparently caused the confusion is that portion of the footnote stating that no "formal process" would be necessary for an attorney suspended less than two years to re-enter the practice of law. Had Combs done any research into the term, he would have discovered the phrase generally relates to a process employed to resolve issues of fact between parties which results in the exercise of discretion of a judicial nature, *i.e.* some formal proceeding.[24] Further research would have revealed this Court's opinion in *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 1991 OK 60, 813 P.2d 1046 providing in pertinent part at ¶ 7:

"... After expiration of a suspension of two years or less Rule 11.8 provides a lawyer may resume the practice of law without an order of this Court, provided the lawyer files with the Clerk of this Court an affidavit which affirms certain matters...."

While the *Miskovsky* opinion does not refer to Rule 9.1, it does serve to apprise the practicing Bar of the requirements of Rule 11.8 and the need for following the rule once a suspension of two years or less has been entered.

¶ 16 If Combs had simply read the disciplinary rules, he would have discovered that the language of Rule 9.1 provides that when a lawyer is suspended there is an affirmative duty, within twenty days, to notify all clients *via* certified mail with pending business of the inability to represent them. There is also a requirement to formally withdraw

---

**22.** Rule 11.8, Rules Governing Disciplinary Proceedings, see note 5, supra.

**23.** Similar language can be found in *State ex rel. Oklahoma Bar Ass'n v. Giger*, 2003 OK 61, fn. 34, 72 P.3d 27.

**24.** See, *Dewey v. State ex rel. Oklahoma Firefighters Pension & Retirement Sys.*, 2001 OK 40, fn. 16, 28 P.3d 539; *Bird v. Willis*, 1996 OK 116, ¶ 4, 927 P.2d 547.

from all pending cases. Finally, during the same twenty day period, the lawyer must file an affidavit with the Commission and with the Clerk of the Supreme Court affirming his compliance with the rule and providing a list of the clients notified along with a summary of all other state and federal courts and administrative agencies before which the lawyer is admitted to the practice of law.[25]

¶ 17 Merely reading the index of the disciplinary rules would have directed Combs to Rule 11.8 which is entitled "[r]einstatement without order after suspension of two (2) years or less," the precise situation in which the attorney found himself. The body of the rule directs such a suspended attorney that the practice of law may be resumed upon the expiration of the suspension period by filing with the Clerk of the Supreme Court an affidavit affirming that the affiant has not engaged in the unauthorized practice of law or otherwise violated the rules of the Bar Association or the terms of the order of suspension.[26]

¶ 18 There is no question that the attorney attempted to educate himself on the requirements related to his suspension and future practice of law by contacting attorneys both in the prosecutorial and in the ethics offices of the Bar Association. A review of the Bar Association's responses to those inquiries reveals that the information imparted was deficient. None of the three Bar representatives contacted referred either Combs or his attorney to both of the rules specifically applicable to Combs' situation. Most certainly, an attorney paying dues to the Association should

be able to expect direction to the rules governing professional conduct and disciplinary proceedings relating to such a well defined, fact specific set of circumstances.

## ENHANCEMENT, MITIGATION AND APPROPRIATE DISCIPLINE

¶ 19 The trial panel recommended: a six month suspension retroactive to January 1, 2008; the attorney be required to demonstrate a basic knowledge and understanding of the Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App.2 and Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; and the imposition of the costs of the disciplinary proceeding. The parties did not stipulate to the appropriate imposition of discipline. This Court remains the ultimate decision maker concerning attorney discipline and is not bound by the trial panel's findings, recommendations and conclusions.[27]

¶ 20 Disciplinary history is a factor which may be taken into account when tailoring the appropriate discipline for a lawyer's misdeeds.[28] We take seriously the indifference of attorneys to their wrongdoing.[29] In *Combs I*, the attorney was disciplined for the mishandling of client funds. Every lawyer is charged with the observance of the rules of professional conduct.[30] We recognize that lack of knowledge of the rules of professional conduct and disciplinary proceedings raises its own concerns and should be considered in fashioning an appropriate

---

**25.** Rule 9.1, Rules Governing Disciplinary Proceedings, see note 5, supra.

**26.** Rule 11.8, Rules Governing Disciplinary Proceedings, see note 5, supra. It is agreed that Combs did not comply with the requirements of the rule before he began practicing law in January of 2008. The first attempt to comply with the rule was made with the filing of the affidavit in connection with his motion for order of reinstatement on March 5, 2008 which was later supplemented on April 21, 2008.

**27.** *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Blackburn*, 1999 OK 17, ¶ 30, 976 P.2d 551; *State ex rel. Oklahoma Bar Ass'n v. McCoy*, 1996 OK 27, ¶ 14, 912 P.2d 856.

**28.** *State ex rel. Oklahoma Bar Ass'n v. Patmon*, 1998 OK 91, ¶ 21, 975 P.2d 860, *cert. denied*, 526 U.S. 1120, 119 S.Ct. 1772, 143 L.Ed.2d 801 (1999), *rehearing denied*, 527 U.S. 1058, 120 S.Ct. 25, 144 L.Ed.2d 828 (1999); *State ex rel. Oklahoma Bar Ass'n v. Kessler*, see note 16, supra.

**29.** See, *State ex rel. Oklahoma Bar Ass'n v. Busch*, 1996 OK 38, ¶ 32, 919 P.2d 1114; *State ex rel. Oklahoma Bar Ass'n v. Butler*, 1995 OK 89, ¶ 18, 903 P.2d 872.

**30.** *In re Reinstatement of DeBacker*, 2008 OK 17, ¶ 23, 184 P.3d 506.

discipline.[31] However, in the absence of deceitful motive, such ignorance may be considered a mitigating factor.[32]

¶ 21 Here, we are not presented with an individual blatantly ignoring the rules by which he is governed. Rather, when the attorney realized he did not fully understand the language of the opinion imposing discipline in *Combs I*, he made multiple inquiries of the Bar Association in an attempt to keep him from violating his suspension and then later inadvertently engaging in the unauthorized practice of law for failure to have followed the rules applicable to a suspension for less than two years. He did not receive appropriate direction from the Bar Association. It is important to look at these factors and circumstances.[33] It is uncontested that when Combs returned to the practice of law, he was convinced that he had satisfied all conditions of his suspension. Once he was informed that his name continued to be on the list of suspended lawyers, he immediately self-suspended himself and filed an application for reinstatement. A lawyer's state of mind may be considered in fashioning discipline.[34]

¶ 22 We recognize that the facts of this cause are unique. The language in the original disciplinary opinion may arguably have led the attorney to believe that there were no conditions precedent to his resumption of the practice of law after the expiration of his suspension other than the payment of costs. The Bar Association did not specifically direct Combs or his counsel to the rules relating to his situation nor did it explain the requirements of the rules. Finally, the attorney completely failed to familiarize himself with the rules related to his suspension and to comply with the specific requirements of those rules. Nevertheless, Combs acted in ignorance rather than in rebellion against disciplinary authority. Furthermore, it is not alleged that any clients suffered harm because of the attorney's actions.

¶ 23 Similar causes have resulted in discipline ranging from public censure to disbarment depending on the mitigating circumstances.[35] The ninety-day suspension entered in *Combs I* combined with the attorney's self-suspension and the current disciplinary process, has now extended in excess of a year. Upon a *de novo*[36] review

31. *State ex rel. Oklahoma Bar Ass'n v. Wagener*, 2005 OK 3, ¶ 13, 107 P.3d 567; *State ex rel. Oklahoma Bar Ass'n v. Downes*, 2005 OK 33, ¶ 45, 121 P.3d 1058, *rehearing granted, opinion modified* on other grounds (2005).

32. See, *State ex rel. Oklahoma Bar Ass'n v. Jaques*, 2000 OK 57, ¶ 26, 11 P.3d 621.

33. See, *State ex rel. Oklahoma Bar Ass'n v. Samara*, 1989 OK 80, ¶¶ 8–9, 775 P.2d 806.

34. See, *State ex rel. Oklahoma Bar Ass'n v. Whitworth*, 2008 OK 22, ¶ 51, 183 P.3d 984; *State ex rel. Oklahoma Bar Ass'n v. O'Neal*, 1993 OK 61, ¶ 9, 852 P.2d 713.

35. *In re Reinstatement of DeBacker*, see note 30, supra [Sentence deferred one year where attorney inadvertently held himself out as licensed for 27 years while in corporate practice.]; *State ex rel. Oklahoma Bar Ass'n v. Patterson*, see note 19, supra [Attorney misconduct in engaging in the unauthorized practice of law in the federal circuit court during a period of suspension subject to public censure.]; *State ex rel. Oklahoma Bar Ass'n v. O'Neal*, see note 34, supra [Attorney publicly censured for unauthorized practice of law while under suspension for nonpayment of bar dues and noncompliance with CLE requirements.]; *State ex rel. Oklahoma Bar Ass'n v. Wagener*, see note 31, supra [Engaging in unau-

thorized practice of law during suspension and failure to file petition in error and notify client warranted six month suspension.]; *State ex rel. Oklahoma Bar Ass'n v. Malloy*, 2006 OK 38, ¶ 13, 142 P.3d 383 [Attorney suspended for nine months for unauthorized practice of law.]; *State ex rel. Oklahoma Bar Ass'n v. Patmon*, see note 28, supra [Attorney, who among other things, assisted secretary in the unauthorized practice of law suspended for two years and a day.]; *State ex rel. Oklahoma Bar Ass'n v. Holden*, 1996 OK 88, ¶ 8, 925 P.2d 32 [Attorney suspended from the practice of law for two years and one day for the unauthorized practice of law while under disciplinary suspension.]; *State ex rel. Oklahoma Bar Ass'n v. Wolfe*, 1997 OK 47, ¶ 13, 937 P.2d 988 [Attorney disbarred because of unauthorized practice of law while under disciplinary suspension coupled with other misconduct.]; *State ex rel. Oklahoma Bar Ass'n v. Downing*, see note 4, supra [Attorney disbarred because while under suspension, engaged in the unauthorized practice of law, lied to a client about the status of a case and about the attorney's ability to continue representation, and failed to act with due diligence and competence.].

36. *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Garrett*, see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Anderson*, see note 3, supra.

of the unique facts and the applicable law, we hold that respondent's failure to comply with the rules governing a suspension of less than two years warrants: 1) a retroactive suspension of six months to the date the attorney filed his motion for an order of reinstatement; 2) the payment of costs of $1,006.61;[37] and 3) a requirement that the attorney file, with this Court and with the complainant, an affidavit declaring that he has familiarized himself with and has a clear understanding of the Rules of Professional Conduct, 5 O.S. Supp.2008, Ch. 1, App. 2 and the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

## CONCLUSION

¶ 24 Today's opinion should serve not only as guidance to Combs as to the requirements of Rules 9.1[38] and 11.8,[39] Rules Governing Disciplinary Proceedings, but to other attorneys serving suspensions of two years or less. Although we have considered the attorney's lack of knowledge of the rules both in fashioning the appropriate discipline and in mitigation, there now exists a clear direction from this Court on the issue. The practicing bar and those who seek to represent respondents should take notice.

¶ 25 The six-month suspension is retroactive to the date of the filing of the original application for reinstatement or March 5, 2008. Requiring Combs to file, with this Court and with the complainant, an affidavit declaring that he has familiarized himself with and has a clear understanding of the Rules of Professional Conduct, 5 O.S. Supp. 2008, Ch. 1, App. 2 and the Rules Governing Disciplinary proceedings, 5 O.S.2001, Ch. 1, App. 1–A, will act as a bar to a plea of ignorance of such rules in the future. To ensure there is no confusion, the attorney will be free to re-enter the practice of law only upon the filing of such statement and the payment of $1,006.61 in costs.[40]

RESPONDENT SUSPENDED FOR SIX MONTHS RETROACTIVE TO MARCH 5, 2008; ORDERED TO PAY COSTS OF THE PROCEEDING IN THE AMOUNT OF $1,006.61; AND DIRECTED TO FILE AN AFFIDAVIT DECLARING HIS FAMILIARITY AND UNDERSTANDING OF RULES OF PROFESSIONAL CONDUCT AND DISCIPLINARY PROCEEDINGS.

WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, WATT, REIF, JJ., concur.

KAUGER, J., concurs in result.

TAYLOR, J., dissents:

This suspended attorney has continued his course of not following the law and the ethical requirements imposed upon members of the Bar. He now seeks to blame this Court for confusing him with its footnotes. He seeks to blame the Oklahoma Bar Association for not advising him of his responsibilities. He was responsible for knowing and following the law and the rules. Once again, he has fallen short of that requirement. I would impose a period of suspension that is not retroactive.

COLBERT, J., not participating.

---

**37.** Rule 6.16, Rules Governing Disciplinary Proceedings, see note 7, supra.

**38.** Rule 9.1, Rules Governing Disciplinary Proceedings, see note 5, supra.

**39.** Rule 11.8, Rules Governing Disciplinary Proceedings, see note 5, supra.

